IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| CAPITAL AUTOMOTIVE SALES, LLC, | ) | |
| A North Carolina limited liability company, | ) | Case No. _____ |
| doing business as Capital Nissan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **VERIFIED COMPLAINT** |
| v. | ) | |
| | ) | |
| ZACHARY A. BURR, jointly, severally and | ) | |
| individually, and | ) | |
| JACOB CHARLES TETER, jointly, severally | ) | |
| and individually, | ) | |
| | ) | |
| Defendants. | ) | |

NOW COMES Plaintiff Capital Automotive Sales, LLC, by and through undersigned counsel, and complaining against the named Defendants, alleges upon personal knowledge as to itself and its own acts, and upon information and belief with respect as to all other matters, as follows:

**THE PARTIES**

1.     Plaintiff Capital Automotive Sales, LLC is a limited liability company organized and existing under and by virtue of the laws of the State of North Carolina, with its principal place of business located in Wilmington, North Carolina.

2.     Plaintiff Capital Automotive Sales, LLC does business as Capital Nissan (hereinafter "**Plaintiff**" or "**Capital Nissan**").

3.     Plaintiff is franchised retailer of new and used motor vehicles, service, finance and insurance products and motor vehicle parts and accessories in New Hanover County and elsewhere across the State of North Carolina.

1

4.     Plaintiff is informed and believes and therefore alleges that Defendant Zachary A. Burr ("**Defendant Burr**") is an individual domiciled in Wilmington, North Carolina.

5.     Defendant Burr conducts business throughout the state of North Carolina, including in counties located within the Eastern District of North Carolina.

6.     Plaintiff is informed and believes and therefore alleges that Defendant Jacob Charles Teter ("**Defendant Teter**") is an individual domiciled in Wilmington, North Carolina.

7.     Defendant Teter conducts business throughout the state of North Carolina, including in counties located within the Eastern District of North Carolina.

8.     Both Defendant Burr and Defendant Teter (collectively, "**Defendants**") have *engaged in a unfair and deceptive scheme affecting interstate commerce and conspired with one another as alleged in this Complaint*, which conduct has occurred throughout the state of North Carolina, including in counties located within the Eastern District of North Carolina.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction under 28 U.S.C. § 1331 based upon Defendant's violations of Title 3 of the Omnibus Crime Control and Safe Streets Act of 1968, specifically: 18 U.S.C. § 2510 *et seq.*, the Wire and Electronics Communications Interception Act; 18 U.S.C. § 1030, *et seq.*, the Computer Fraud and Abuse Act; and 18 U.S.C. § 2701, *et seq.*, the Stored Wire and Electronic Communications Privacy Act.

10.     This Court has pendent jurisdiction of the related state law claims asserted in this Complaint pursuant to 28 U.S.C. § 1367 because they arise from a nucleus of operative facts common to the causes of action arising under Claims for Relief One through Three, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

2

11.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) since some, or all, of the conduct which is the subject of this Complaint occurred within the counties comprising the Eastern District of North Carolina.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

12.     Plaintiff has continuously engaged in the business of selling, leasing and servicing of new and used motor vehicles for individual and corporate customers and the general public, as well as the sale of finance and insurance products and services, for over 6 years.

13.     Plaintiff Capital Nissan has continuously conducted business under the name "Capital Nissan" since June 29, 2011.

14.     Plaintiff Capital Nissan is franchised dealer of Nissan® new motor vehicles, parts, service and accessories.

15.     Since 2011, Plaintiff Capital Nissan has invested millions of dollars in advertising, marketing and promoting the Capital Nissan brand and designated products, including the running of television throughout North Carolina, and advertising and marketing throughout the United States via the Internet through its Website located at "CapitalNissan.com" and other forms of Internet advertising.

16.     A substantially large number of vehicles have been sold and leased by Capital Nissan to consumers who reside all across the United States.

17.     The Capital Nissan mark, as used in connection with Plaintiff Capital Nissan's business and the sale of its services, goods and commercial activities, is famous in North Carolina, inherently distinctive, and as a result of Plaintiff Capital Nissan's extensive use, advertising and promotional efforts as described above, the Capital Nissan mark is well-known

3

and is recognized by customers around the state of North Carolina as signifying and representing Plaintiff Capital Nissan's business and high quality products.

18.     As a result of the advertising and expenditures previously described, Plaintiff Capital Nissan has established considerable goodwill in the Capital Nissan name and mark, which is an invaluable asset of substantial and inestimable worth to Capital Nissan.

19.     At all times relevant, Plaintiff Capital Nissan have won awards for its continued and outstanding conduct, including but not limited to, recognition of outstanding sales and customer service performance by Nissan.

### DEFENDANTS' EMPLOYMENT WITH PLAINTIFF

20.     From June 17, 2013 to July 27, 2017, Defendant Teter was an employee of Plaintiff.

21.     From June 1, 2016 to July 10, 2017, Defendant Burr was an employee of Plaintiff.

22.     Plaintiff adopted an Employee Handbook, as amended, that provided some, but not all of Plaintiff's policies and procedures, including but not limited to, Plaintiff's policies on how its employees should treat confidential and proprietary information and that its employees are "*prohibited from using, copying or disclosing confidential or proprietary information outside the scope of his/her assignment*."

23.     On June 23, 2017, Defendant Teter received and acknowledged the contents, policies and procedures set forth in Plaintiff's Employee Handbook.  See Plaintiff's Employee Handbook Acknowledgment that is attached hereto and incorporated herein by reference as **Exhibit 1**.

24.     On June 23, 2017, Defendant Burr received and acknowledged the contents, policies and procedures set forth in Plaintiff's Employee Handbook.  See Plaintiff's Employee

4

Handbook Acknowledgment that is attached hereto and incorporated herein by reference as **Exhibit 2**.

### DEFENDANTS' UNAUTHORIZED ACCESS TO PLAINTIFF'S PROPERTY

25.     Upon information and belief, Defendants installed a Team Viewer client on one or more of Plaintiff's computers to remotely access Plaintiff's computer network server and dealer management system ("**DMS**") that contained substantially all of Plaintiff's confidential and proprietary information as well as non-public personal information of consumers and customers of Capital Nissan.

26.     Upon information and belief, on July 28, 2017, Defendant Teter trespassed upon Plaintiff's property via its computer network server and DMS that hosts and manages its network resources, and accessed Plaintiff's electronic files, including but not limited to, Plaintiff's confidential and proprietary customer and prospect files.

27.     Upon information and belief, Defendant Teter copied all of Plaintiff's electronic files that it accessed via its server, including but not limited to, Plaintiff's confidential and proprietary customer and prospect files.

28.     Upon information and belief, Defendant Teter deleted Plaintiff's electronic files that he accessed from Plaintiff's server, including but not limited to, Plaintiff's confidential and proprietary customer and prospect files.

29.     At all material times, such access by Defendant Teter to Plaintiff's files after his employment termination date was without Plaintiff's consent and knowledge.

30.     Upon information and belief, while still an employee of Plaintiff, Defendant Teter made copies of other property of Plaintiff that Plaintiff currently does not know or have

5

knowledge of, but was without Plaintiff's consent, and Defendant Teter is or has used such property to engage in unlawful acts, including those alleged in this Complaint.

31. Upon information and belief, Defendant Teter did not act alone in engaging in the unlawful conduct as alleged in the Complaint.

32. Upon information and belief, Defendant Burr, and perhaps other unknown parties, assisted Defendant Teter in engaging in unlawful conduct, including as alleged in the Complaint.

## DEFENDANTS' UNLAWFUL COMPETITION

33. At all times relevant, Defendants utilized Plaintiff's property, including but not limited to, Plaintiff's proprietary and confidential customer and prospect files to compete with and against Plaintiff.

34. At all times relevant, Defendants' intentionally misled customers and prospects of Plaintiff to that they would believe that Defendants were still employed by Plaintiff when that was not the case.

35. At all times relevant, while misleading customers and prospects of Plaintiff so that they would believe that Defendants were still an agent of Plaintiff, Defendants sold goods and services to such customers of Plaintiff.

36. In or about September 2017, Defendants utilized Plaintiff's proprietary and confidential customer files that Defendants has unlawfully obtained to sell approximately thirty (30) trucks to Plaintiff's customer, Phoenix Spirit Group, LLC ("**thirty-truck sale**").

37. Upon information and belief, as part of this thirty-truck sale, Defendants informed Phoenix Spirit Group that they were still working for Plaintiff.

6

38.     Upon information and belief, as part of this thirty-truck sale, Defendants falsely informed Phoenix Spirit Group that they were working through Plaintiff's Charlotte, North Carolina location.

39.     Plaintiff does not maintain a Charlotte, North Carolina location.

40.     Upon information and belief, as part of this thirty-truck sale, Defendants were an agent of a competing dealership named Scott Clark Nissan, and sold these thirty (30) trucks to Phoenix Spirit Group via Scott Clark Nissan and not Plaintiff.

41.     Upon information and belief, Defendants have engaged in other unfair and deceptive conduct, similar to the thirty-truck sale that is currently not known to Plaintiff.

42.     At all times relevant, Defendants engaged in unfair, misleading and deceptive conduct as alleged herein this Complaint, as well as in other acts of unfair, misleading and deceptive conduct that is currently unknown to Plaintiff, in order to compete against Plaintiff.

## CONSPIRACY

43.     At all times relevant, Defendants were employees, co-venturers, partners, co-conspirators or in some manner agents or principals, or both, for each other and were acting within the scope of their agency in their joint venture.

44.     At all times relevant, the Defendants, *i.e.*, Burr and Teter, were employees or former employees of Plaintiff Capital Nissan, and at all times were not acting within the course and scope of said employment.

45.     At all times relevant, Defendants were acting in a joint venture, and conspired to damage the reputation and brand awareness of Plaintiff Capital Nissan.

46.     As alleged throughout this Complaint, acting in the capacity as a joint venturer of a conspiracy with Defendant Teter, and wholly outside of the course and scope of his said former

7

employment / agency relationship with Plaintiff Capital Nissan, Defendant Burr engaged in the conduct as alleged in this Complaint.

47.     At all such relevant times, Defendants were not authorized to have access to Plaintiff's computer network server and DMS, or to access Plaintiff's property, copy Plaintiff's property, or delete Plaintiff's property from the server and DMS.

48.     At all materials times, Defendants did not have Plaintiff's consent to use Plaintiff's property after their employment with Plaintiff terminated.

49.     As of the filing of this Complaint, all of Plaintiff's systems have still not been fully restored, and Plaintiff continues to suffer damages as a result of the ongoing disruption to Plaintiff's business.

50.     Plaintiff has been substantially damaged by Defendants' deletion of Plaintiff's electronic files from its servers and DMS.

51.     Plaintiff estimates that it has lost over $100,000 worth of new revenue because of the acts by Defendants that obtained Plaintiff's electronic files and used them to compete against Plaintiff, as well as damaging Plaintiff's reputation and causing it to be unable to serve its clients during this timeframe due to the deletion of Plaintiff's electronic files.

52.     Upon information and belief, and during this same time frame, Defendants also copied Plaintiff's computer network and is storing a copy of it in at least one other computer and/or network location.

53.     Defendants were not authorized to have access to these electronic files of Plaintiff, and did not have authority to copy and redirect them to another computer or server location.

8

54. Plaintiff does not have access to the computer networks where Defendants are storing Plaintiff's electronic files and other confidential information and intellectual property.

55. As a result of Defendants' unauthorized access, copying and use of Plaintiff's computer network and electronic files, Defendants accessed and used certain information that they did not have authority to have and use.

56. As a result of Defendants' unauthorized access, copying and use of Plaintiff's property, Plaintiff incurred substantial damages and continues to be irreparably harmed.

57. As a result of Defendants' unauthorized access, copying and use of Plaintiff's property, Defendants now have unauthorized copies of Plaintiff's proprietary and confidential information.

58. Upon information and belief, Defendants intended to, and are now using, Plaintiff's proprietary and confidential information in order to compete with and against Plaintiff.

59. As a result of Defendants' conduct of deleting Plaintiff's property, Plaintiff incurred substantial damages from having its computer network and electronic files unavailable to it, including but not limited to, causing it to be unable to conduct business for at least two (2) days; incurred expenses to investigate the incident; incurred expenses to restore computer network and recreate some of the deleted electronic files; incurred expenses to create and re-secure its computer network; and other expenses not known currently to Plaintiff.

60. Upon information and belief, Defendants gained unauthorized access to copy Plaintiff's proprietary and confidential information located and stored in its computer network, DMS and electronic files, and have monitored Plaintiff's computer and electronic activities since at least July 2017.

9

61.     Upon information and belief, Defendants have been utilizing such obtained data and information for their own personal gain, retribution against Plaintiff, to compete with and against Plaintiff and for other purposes not known currently to Plaintiff.

62.     Upon information and belief, Defendants have engaged in other hacking attempts of Plaintiff's computer network, DMS, electronic accounts and emails.

63.     Upon information and belief, there are other acts by Defendants of unauthorized access, copying and use of Plaintiff's property that are currently unknown to Plaintiff.

64.     Upon information and belief, Defendants have engaged in the conduct as alleged in this Complaint commencing at least as early as of July 2017 and continuing to at least the date of filing of this Complaint:

   a.  Hacked, broke into and or gained unauthorized access to Plaintiff's internet, computer network server, DMS, electronic files, proprietary information, confidential information, and third-party accounts;

   b.  Hacked, broke into or gained unauthorized access to Plaintiff's electronic communications;

   c.  Hacked, broke into or gain unauthorized access to Plaintiff's electronic database, proprietary data, DMS, client information and other intellectual property including but not limited to, contact information, historic data and financial information contained therein;

   d.  Hacked, broke into or gained unauthorized access to Plaintiff's computer networks and third-party accounts to unlawfully monitor it and its officers, employees, agents and/or customers;

10

e. Attempted to hack, break into or gain unauthorized access to other networks, computers and/or online accounts of Plaintiff;

f. Remains in possession of Plaintiff's proprietary and confidential information; and

g. Other acts currently not known to Plaintiff.

65.    Upon information and belief, Defendants hacked, attempted to hack, broke into, utilized, accessed, altered, deleted, copied and/or printed data stored on the computer network server and computers of Plaintiff, and such activities were without the knowledge, authorization or consent from Plaintiff.

66.    Upon information and belief, Defendants utilized information obtained from Defendants' unlawful access to the computer network, computers and emails to obtain Plaintiff's customer data and leads, divert such business away from Plaintiff, and to start a business to compete against Plaintiff.

67.    Upon information and belief, Defendants attempted to hack, and hacked and broke into Plaintiff's computers, electronic files and accounts, and then destroyed evidence of Defendants' unlawful access to such computer network server, computers and electronic files without the consent from Plaintiff.

68.    During material times as alleged herein, Defendants had a pre-existing relationship with Plaintiff.

69.    As a result of this pre-existing relationship with Plaintiff, Defendants owed a fiduciary duty to Plaintiff arising from their employment with Plaintiff.

70.    As a result of these pre-existing relationships, Defendants had access to Plaintiff's confidential and proprietary information, as alleged herein, including but not limited to, computer network, Internet, DMS, computers and electronic data and accounts.

11

71.     Plaintiff is without knowledge as to why Defendants would want to secretly access Plaintiff's computer network, monitor its computer use, and possess, use, alter, copy, delete or print data belonging to Plaintiff without the consent from Plaintiff, but is under the belief and understanding that Defendants have benefited from their unlawful activities as alleged herein (in the form of retribution against Plaintiff for having their employment terminated by Plaintiff), to intentionally and maliciously damage Plaintiff's business, in diverting business away from Plaintiff for the purpose of personal financial gain, by accessing, copying and using Plaintiff's proprietary and confirmation information, intercepting emails regarding potential new sales leads, and for other benefits not known currently by Plaintiff.

72.     As a direct result of such unauthorized and stealth access to Plaintiff's computer network, DMS, software applications and electronic data files and accounts therein, Defendants caused Plaintiff's data that was stored on Plaintiff's computer network server, DMS and electronic mail to be converted, altered, copied, deleted or printed without the consent from Plaintiff.

73.     During Defendants' unauthorized and stealth access of Plaintiff's computer network server, computers and the electronic data and accounts contained therein, Defendant:

      a.     Converted, altered, copied, deleted and printed data stored on Plaintiff's computer network server, DMS, electronic mail and electronic accounts;

      b.     Deleted copies of electronic evidence of their unlawful activities of monitoring Plaintiff's computer network server and computer activities;

      c.     Attempted to hack, hacked into or gained unauthorized access to online accounts of Plaintiff; and

      d.     In other respects not known currently to Plaintiff.

74.     As a result of this unauthorized and stealth access of Plaintiff's computer network server, DMS, electronic mail and electronic accounts, and deletion of files as alleged herein, Plaintiff's have incurred substantial costs and expense to re-establish and re-secure its entire computer network and electronic files and accounts.

75.     As of the date of the filing of this Complaint, Plaintiff is still accessing the data, code, files, confidential information and intellectual property which was converted, accessed, altered, copied or deleted by the Defendants and the amount of its damages Defendants have caused Plaintiff to incur as a result of such unauthorized and stealth hacking of Plaintiff's computer network server, computers and electronic files and accounts.

76.     The crux of the claims alleged in this lawsuit originate from Defendants' actions in disabling Plaintiff's critical computer systems and network server and the unauthorized, stealth and unlawful copying and use of electronic files, electronic monitoring and hacking of Plaintiff's electronic communications and files, the utilization of such data and information by Defendants, and the resulting damage caused by such conduct to Plaintiff.

**FIRST CLAIM FOR RELIEF**
**Violations of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et se*q.**

77.     Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if the same were set forth at length herein.

78.     Plaintiff asserts this Claim for Relief against Defendant pursuant to § 1030 of the federal Computer Fraud Abuse Act ("**CFAA**"), 18 U.S.C. § 1030.

79.     Section 1030 provides in part:

**(a)**     Whoever—

* * * * *

13

**(2)**  intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—

* * * * *

**(C)**  information from any protected computer if the conduct involved an interstate or foreign communication;

* * * * *

**(4)**  knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;

* * * * *

**(5)**

**(A)**  knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

**(B)**  intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

**(C)**  intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

* * * * *

shall be punished as provided in subsection (c) of this section.

**(b)**  Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section.

* * * * *

**(g)**  Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory

14

damages and injunctive relief or other equitable relief… No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.

80. Section 1030 of the CFAA defines the term "protected computer" to include "a computer … which is used in interstate or foreign commerce or communication." 18 U.S.C. § 1030 (e)(2)(B).

81. Each computer used by Plaintiff as alleged in this Complaint is connected to the Internet and is used in interstate communications and is therefore a "protected computer" within the meaning of § 1030.

82. Section 1030 of the CFAA defines the term "exceeds authorized access" to mean "access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030 (e)(6).

83. By accessing Plaintiff's computer network server, and intercepting its communications, and copying its electronic files, information, intellectual property, financial information and other data not known currently to Plaintiff, Defendants have gained "access to a computer without authorization or exceeds authorization access" within the meaning of § 1030.

84. By virtue of the foregoing, Defendants are liable to Plaintiff for their violation of § 1030 of the CFAA, including but not limited to, violations of 18 U.S.C. §§ 1030 (a)(2)(c), (a)(4) and (a)(5)(A-C).

85. As a result of the Defendants' conduct as described above, the Defendants have violated the provisions of 18 U.S.C. § 1030(a)(2)(c), by (1) intentionally accessing the protected computers of Plaintiff; (2) without authorization (or in excess of "authorized" access) of Plaintiff; (3) obtaining information from such protected computers; and (4) by other conduct not known currently by Plaintiff.

15

86. As a result of the conduct of Defendants described above, the Defendants have violated the provisions of 18 U.S.C. § 1030(a)(4), by (1) intentionally furthering a fraud as alleged throughout this Complaint, including but not limited to, obtaining Plaintiff's information, proprietary and confidential information and property of value; (2) by knowingly accessing the protected computers of Plaintiff; and (3) without authorization (or in excess of "authorized" access) of Plaintiff.

87. As a result of the Defendants' conduct described above, the Defendants have violated the provisions of 18 U.S.C. § 1030(a)(5)(A-C), by (1) knowingly causing the transmission of a computer monitoring program, information, code, or command, and as a result of such conduct, intentionally causing damage without authorization from Plaintiff, to the protected computers of Plaintiff; (2) intentionally accessing the protected computers of Plaintiff without its authorization, and as a result of such conduct, recklessly causing damage to Plaintiff; and (3) intentionally accessing the protected computers of Plaintiff without its authorization, and as a result of such conduct, causing damage and loss to Plaintiff.

88. Defendants knowingly accessed the protected computers of Plaintiff to unlawfully (1) obtain information about Plaintiff's activities, (2) obtain information to divert business away from Plaintiff to other business unknown currently to Plaintiff, (3) obtain information to gain access to, control and convert Plaintiff's property, (4) retribution against Plaintiff for terminating Defendants' employment; and (5) for other purposes currently unknown to Plaintiff.

89. Defendants intentionally caused "Damage" as defined in 18 U.S.C. § 1030(e)(8) by causing a "loss aggregating at least $5,000 in value during any 1-year period" to Plaintiff, which aggregate amount includes but is not limited to, impairment to the integrity or availability of data, a program, a system, or information resulting in: (1) incurred technical and legal

16

expenses to investigate the allegations alleged in this Complaint, (2) purchase of new electronic equipment; (3) increased advertising and marketing expenses to obtain new clientele as a result of Defendants utilizing the obtained information to compete against Plaintiff, (4) lost profits and goodwill from the thirty-truck sale; and (5) other monetary losses currently unknown to Plaintiff.

90.     Defendants' actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiff to an award of punitive damages.

91.     Plaintiff has no adequate remedy of law for the continued violation of the CFAA by Defendant.

WHEREFORE, Plaintiff, demand judgment against Defendants for the following:

a.      For Compensatory Damages;

b.      For Temporary and Permanent Injunction to cease such unlawful activity;

d.      For reasonable attorneys' fees and other litigation costs reasonably incurred; and

e.      For such other and further relief as the Court may deem just and equitable.

### SECOND CLAIM FOR RELIEF
**Violations of the Federal Stored Communications Act, 18 U.S.C. § 2701, *et seq*.**

92.     Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if the same were set forth at length herein.

93.     Plaintiff asserts this Claim for Relief against Defendants pursuant to 18 U.S.C. § 2701 of the Federal Stored Communications Act ("**SCA**"), 18 U.S.C. § 2701, *et seq*.

94.     Section 2701 provides in part:

a. Whoever--
   i. intentionally accesses without authorization a facility through which an electronic communication service is provided; or

   ii. intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic

17

communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

95.     As a result of the conduct by Defendants as described above in this Complaint, Defendants have violated the provisions of 18 U.S.C. § 2701, *et seq*., by intentionally accessing without permission and improperly monitoring the electronic communications being stored on the computer network and computers of Plaintiff.

96.     Defendants used the improperly accessed and monitored electronic communications to wrongfully: (1) obtain information about Plaintiff's activities, (2) obtain information to divert business away from Plaintiff to other business unknown currently to Plaintiff, (3) obtain information to gain access to, control and convert Plaintiff's property, (4) as retribution against Plaintiff for terminating their employment with Plaintiff, (5) to benefit from confidential information obtained from their conduct to engage in the thirty-truck sale and other like transactions; and (6) for other purposes not known currently by Plaintiff.

97.     As a result, Plaintiff has been damaged by: (1) incurring technical and legal expenses to investigate the allegations alleged in this Complaint, (2) the purchase of new electronic equipment, (3) increased advertising and marketing expenses, (4) lost profits from sales circumvented by Defendants; and (5) other monetary losses currently unknown to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

a.      For Compensatory Damages;

b.      For Statutory Damages, pursuant to 18 U.S.C. § 2707;

c.      For Punitive Damages;

d.      For Temporary and Permanent Injunction to cease such unlawful activity;

e.      For reasonable attorneys' fees and other litigation costs reasonably incurred; and

f.      For such other and further relief as the Court may deem just and equitable.

18

## THIRD CLAIM FOR RELIEF
### Violations of the Federal Wire and Electronic Communications Privacy Act

98.     Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if the same were set forth at length herein.

99.     Plaintiff asserts the Claim for Relief against Defendants pursuant to § 2511 and 2520 of federal Wire and Electronic Communications Privacy Act ("**ECPA**"), 18 U.S.C. §§ 2511 and 2520.

100.    Section 2511 of the ECPA provides in part:

> **(1)**     Except as otherwise specifically provided in this chapter any person who—
>
> > **(a)**     intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, … or electronic communication;
>
> > \* \* \* \* \*
>
> > **(d)**     intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire … or electronic communication in violation of this subsection; … shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

101.    Section 2520 of the ECPA provides in part:

> **(a)**     **In General.—**Except as provided in section 2511 (2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.
>
> **(b)**     **Relief.—** In an action under this section, appropriate relief includes—
>
> > **(1)**     such preliminary and other equitable or declaratory relief as may be appropriate;
>
> > **(2)**     damages under subsection (c) and punitive damages in appropriate cases; and

19

**(3)** a reasonable attorney's fee and other litigation costs reasonably incurred.

102. Section 2510 of the ECPA, setting forth the definitions of the terms in § 2511, defines "person" to include "any employee, or agent of the United States or any State or political subdivision thereof ..." 18 U.S.C. § 2510(6). Accordingly, each Defendant is a "person" within the meaning of § 2511.

103. Section 2510 defines "electronic communication" to include "any transfer of signs, signals, writing, imaging, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo electronic, or photo optical system that affects interstate or foreign commerce, ..." 18 U.S.C. § 2510(12). Accordingly, the data and information stored in the computer network and electronic mails that Defendants accessed, copied and is storing at other networks as alleged herein this Complaint constitute an "electronic communication" within the meaning of § 2511.

104. Section 2510 defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). Section 2510 defines "electronic, mechanical, or other device" to mean "any device or apparatus which can be used to intercept a wire, oral, or electronic communication," subject to exclusions not relevant to this action. 18 U.S.C. §2510(5).

105. The computer device(s) used by Defendants to remotely gain access to Plaintiff's computer network server and the date therein as alleged in this Complaint constitute an "electronic ... device" within the meaning of 18 U.S.C. § 2510(5).

20

106. By using said computer(s) to secretly obtain and monitor Plaintiff's electronic files and computer communications, Defendants "intercept" that communication within the meaning of § 2511.

107. By virtue of the foregoing, Plaintiff is a "person whose … electronic communication is intercepted…or intentionally used in violation of this chapter" within the meaning of §2530.

108. At all relevant times herein, subject to specific exceptions, 18 U.S.C. § 2511 prohibits the intentional interception, disclosure, or use of the contents of any electronic communications between two parties without the consent of one or both of the parties to that communication.

109. Defendants intentionally intercepted Plaintiff's electronic communications, *i.e.*, electronic mail, without its knowledge or consent thereby violating 18 U.S.C. § 2511(1)(a).

110. Defendants intentionally disclosed or endeavored to disclose Plaintiff's electronic communications, *i.e.*, e-mails, to others currently unknown to Plaintiff, without Plaintiff's consent while knowing or having reason to know that the information was obtained through the interception of wire, oral or electronic communication in violation of 18 U.S.C. §2511 (1)(c).

111. Defendants intentionally used, or endeavored to use, the contents of Plaintiff's electronic communications, *i.e.*, email, while knowing or having reason to know that the information was obtained through the interception of wire, oral or electronic communication in violation of 18 U.S.C. § 2511 (1)(d).

112. By virtue of the foregoing, Defendants are liable to Plaintiff for his violation of §§ 2511 and 2520 of the ECPA.

113.    Defendants used the intercepted electronic communications to wrongfully: (1) obtain information about Plaintiff's activities, (2) obtain information to divert business away from Plaintiff to other business unknown currently to Plaintiff, (3) obtain information to gain access to, control and convert Plaintiff's property, (4) as retribution against Plaintiff for terminating their employment with Plaintiff (5) to benefit from confidential information obtained in the conduct alleged in this Complaint; and (6) for other purposes not known currently by Plaintiff.

114.    As a result, Plaintiff has been damaged by: (1) incurring technical and legal expenses to investigate the allegations alleged in this Complaint, (2) the purchase of new electronic equipment; (3) increased advertising and marketing expenses, (4) lost profits from the thirty-truck sale; and (5) other monetary losses currently unknown to Plaintiff.

115.    The actions of Defendants complained of herein were conscious, intentional, wanton and malicious, entitle Plaintiff to an award of punitive damages.

116.    Plaintiff has no adequate remedy at law for Defendants continued violation of the ECPA.

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

a.    For Compensatory Damages;

b.    For Statutory Damages, pursuant to 18 U.S.C. § 2707;

c.    For Punitive Damages;

d.    For Temporary and Permanent Injunction to cease such unlawful activity;

e.    For reasonable attorneys' fees and other litigation costs reasonably incurred; and

f.    For such other and further relief as the Court may deem just and equitable.

**FOURTH CLAIM FOR RELIEF**
**Violations of North Carolina Computer-Related Crime Act**

117.    Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if the same were set forth at length herein.

118.    Plaintiff asserts the Claim for Relief against Defendants pursuant to § 14458 of the North Carolina Computer-Related Crime Act, N.C.G.S. §§ 14-453 through 14-458.

119.    N.C.G.S. § 14-458 states:

(a)    Except as otherwise made unlawful by this Article, it shall be unlawful for any person to use a computer or computer network without authority and with the intent to do any of the following:

(1)    Temporarily or permanently remove, halt, or otherwise disable any computer data, computer programs, or computer software from a computer or computer network.

(2)    Cause a computer to malfunction, regardless of how long the malfunction persists.

(3)    Alter or erase any computer data, computer programs, or computer software.

(4)    Cause physical injury to the property of another.

(5)    Make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs, or computer software residing in, communicated by, or produced by a computer or computer network.

(6)    Falsely identify with the intent to deceive or defraud the recipient or forge commercial electronic mail transmission information or other routing information in any manner in connection with the transmission of unsolicited bulk commercial electronic mail through or into the computer network of an electronic mail service provider or its subscribers.

For purposes of this subsection, a person is "without authority" when (i) the person has no right or permission of the owner to use a computer, or the person uses a computer in a manner exceeding the right or permission, or (ii) the person uses a computer or computer network, or the computer services of an electronic mail service provider to transmit unsolicited bulk commercial electronic mail in contravention of the authority granted by or in violation of the policies set by the electronic mail service provider.

23

* * * * *

(c)     Any person whose property or person is injured by reason of a violation of this section may sue for and recover any damages sustained and the costs of the suit pursuant to G.S. 1539.2A.

120.    Defendants' unauthorized and unlawful use of Plaintiff's computer network, computers and deletion of electronic data as alleged herein was without the authority of Plaintiff because Defendants did not have any right, or permission by Plaintiff, to use Plaintiff's computer network and computers, or alternatively, Defendants' use of Plaintiff's computer network and computers were in a manner exceeding the right or permission granted to them by Plaintiff.

121.    Defendants' use of Plaintiff's computer and computer network was with the intent to (1) temporarily or permanently remove, halt, or otherwise disable Plaintiff's computer data, computer programs, and/or computer software from Plaintiff's computer or computer network; (2) cause Plaintiff's computer to malfunction; (3) alter or erase Plaintiff's computer data, computer programs, and/or computer software; and (4) cause physical injury to Plaintiff's property; (5) make or cause to be made unauthorized copies of Plaintiff's printed and electronic computer data, computer programs, and/or computer software residing in, communicated by, or produced by Plaintiff's computer and/or computer network.

122.    Defendants' conduct as alleged herein this Complaint have violated the North Carolina Computer-Related Crime Act, N.C.G.S. § 14458, and Defendants are liable to Plaintiff for such violations.

123.    Plaintiff, as a person whose property has been damaged by Defendants, and as a person who has been injured by reason of a violation of the North Carolina Computer-Related

Crime Act, is entitled to sue for and recover any damages they sustained and the costs of the suit pursuant to N.C.G.S. § 1539.2A.

124.    Defendants purpose for such unlawful conduct was to: (1) obtain information about Plaintiff's activities, (2) obtain information to divert business away from Plaintiff to other business unknown currently to Plaintiff, (3) obtain information to gain access to, control and convert Plaintiff's property, (4) as retribution against Plaintiff for terminating their employment with Plaintiff; and (5) for other purposes not known currently by Plaintiff.

125.    The total amount of Plaintiff's injuries caused by Defendants' conduct as alleged in this Complaint is currently unknown to Plaintiff, but will be proven at trial to include: (1) incurred technical and legal expenses to investigate the allegations alleged in this Complaint, (2) purchase of new electronic equipment; (3) increased advertising and marketing expenses, (4) lost profits and goodwill from the thirty-truck sale; and (5) other monetary losses currently unknown to Plaintiff.

126.    The actions of Defendants complained of herein were conscious, intentional, wanton and malicious, entitling Plaintiff to an award of punitive damages.

127.    Plaintiff has no adequate remedy at law for Defendants continued violation of N.C.G.S. § 14458.

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

a.      For Compensatory Damages;

b.      For Punitive Damages;

c.      For Temporary and Permanent Injunction to cease such unlawful activity;

d.      For reasonable attorneys' fees and other litigation costs reasonably incurred; and

e.      For such other and further relief as the Court may deem just and equitable.

25

## FIFTH CLAIM FOR RELIEF
### Violations of North Carolina Wiretap Act

128.   Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if the same were set forth at length herein.

129.   Plaintiff asserts the Claim for Relief against Defendants pursuant to § 15A287 of the North Carolina Wiretap Act, N.C.G.S. § 15A287.

130.   N.C.G.S. § 15A287 states:

(a)   Except as otherwise specifically provided in this Article, a person is guilty of a Class H felony if, without the consent of at least one party to the communication, the person:

(1)   Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.

(2)   Willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:

a.   The device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communications; or

b.   The device transmits communications by radio, or interferes with the transmission of such communications.

(3)   Willfully discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through violation of this Article; or

(4)   Willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this Article.

131.   N.C.G.S. § 15A296 states:

(a)   Any person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this Article, has a civil cause of action against any person who intercepts, discloses, uses, or procures any other person to intercept, disclose, or use such communications, and is entitled to recover from any other person:

26

(1) Actual damages, but not less than liquidated damages, computed at the rate of one hundred dollars ($100.00) a day for each day of violation or one thousand dollars ($1,000), whichever is higher;

(2) Punitive damages; and

(3) A reasonable attorneys' fee and other litigation costs reasonably incurred.

132. At all relevant times complained of herein, subject to specific exceptions of N.C.G.S. § 15A286 through 15A298, N.C.G.S. § 15A287 prohibits the intentional interception, disclosure, or use of the contents of any electronic communications between two parties without the consent of one or both of the parties to that communication.

133. Defendants intentionally intercepted Plaintiff's electronic communications, *i.e.*, electronic mail, without their consent thereby violating N.C.G.S. § 15A287.

134. Defendants intentionally disclosed or endeavored to disclose Plaintiff's electronic communications, *i.e.*, electronic submissions, e-mails, to others currently unknown to Plaintiff, without Plaintiff's consent while knowing or having reason to know that the information was obtained through the interception of wire, oral or electronic communication in violation of N.C.G.S. § 15A287.

135. Defendants intercepted electronic communications to unlawfully: (1) obtain information about Plaintiff's activities, (2) obtain information to divert business away from Plaintiff to other business unknown currently to Plaintiff, (3) obtain information to gain access to, control and convert Plaintiff's property, (4) as retribution against Plaintiff for terminating their employment with Plaintiff; (5) for financial gain; and (6) for other purposes not known currently by Plaintiff.

136. As a result, Plaintiff has been damaged by: (1) incurring technical and legal expenses to investigate the allegations alleged in this Complaint, (2) the purchase of new

electronic equipment; (3) increased advertising and marketing expenses, (4) lost profits and goodwill from the thirty-truck sale; and (5) other monetary losses currently unknown to Plaintiff.

137. Defendants' actions complained of herein were conscious, intentional, wanton and malicious, entitling Plaintiff to an award of punitive damages.

138. Plaintiff has no adequate remedy of law for the continued violations of the CFAA by Defendants.

139. Pursuant to N.C.G.S. § 15A287, Plaintiff is entitled to relief for the violations of N.C.G.S. § 15A287 by Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

a.      For Compensatory Damages;

b.      For Liquidated Damages, pursuant to N.C.G.S. § 15A296;

c.      For Punitive Damages;

d.      For Temporary and Permanent Injunction to cease such unlawful activity;

e.      For reasonable attorneys' fees and other litigation costs reasonably incurred; and

f.      For such other and further relief as the Court may deem just and equitable.

### SIXTH CLAIM FOR RELIEF
**Violations of North Carolina Trespass to Chattel Common Law**

140. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if the same were set forth at length herein.

141. Plaintiff asserts this Claim for Relief against Defendants pursuant to North Carolina Trespass to Chattel common law.

142. During all material times as alleged herein, Plaintiff's computer network, computers, DMS, electronic communications and electronic data files that Defendants accessed,

28

utilized, altered and deleted as alleged herein were goods or personal chattel belonging to Plaintiff.

143.   Defendants' access to Plaintiff's computer network server, computers, online accounts and other electronic data were not authorized by Plaintiff.

144.   Defendants' unauthorized access to Plaintiff's computer network, computers, online accounts and other electronic data was an exercise of the right of ownership over Plaintiff's computer network server, DMS, computers, online accounts and other electronic data files to utilize, alter and delete their condition and to exclude Plaintiff from exercise its owner's rights over its goods and personal chattel.

145.   Defendants have converted Plaintiff's goods and chattels as alleged herein.

146.   As alleged herein, Defendants' conversion of Plaintiff's goods and chattel has damaged Plaintiff and threatens additional damage in the future.

147.   As alleged herein, Plaintiff has shown that it had either actual or constructive possession of the data, intellectual property or goods in question at the time of the Defendants' trespass, and that Defendants' acts as alleged herein this Complaint were unauthorized, unlawful interference and dispossession of Plaintiff's property.

148.   Defendants trespassed Plaintiff's chattel to unlawfully (1) monitor Plaintiff's activities, (2) divert business away from Plaintiff to other business unknown currently to Plaintiff, (3) gain access to, control and convert Plaintiff's property, (4) retribution against Plaintiff for terminating their employment with Plaintiff; (5) financial gain and (6) for other purposes currently unknown to Plaintiff.

149.   As a result, the Plaintiff has been damaged by: (1) incurring technical and legal expenses to investigate the allegations alleged in this Complaint, (2) the purchase of new

electronic equipment; (3) increased advertising and marketing expenses, (4) lost profits and goodwill from the thirty-truck sale; and (5) for other purposes not known currently by Plaintiff.

150.    Defendants' actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiff to an award of punitive damages.

151.    Plaintiff has no adequate remedy of law for the continued trespass to chattel by Defendants.

152.    Pursuant to North Carolina common law, Plaintiff is entitled to relief for the violations of North Carolina trespass to chattel common law by Defendants' violations of North Carolina trespass to chattel common law.

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

a.      For Compensatory Damages;

b.      For Punitive Damages;

c.      For Temporary and Permanent Injunction to cease such unlawful activity;

d.      For reasonable attorneys' fees and other litigation costs reasonably incurred; and

e.      For such other and further relief as the Court may deem just and equitable.

### SEVENTH CLAIM FOR RELIEF
**Violations of North Carolina Fraudulent Misrepresentation Common Law**

153.    Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if the same were set forth at length herein.

154.    Plaintiff asserts this Claim for Relief against Defendant pursuant to North Carolina Fraudulent Misrepresentation common law.

155.    Defendants made false representations to Plaintiff that Plaintiff reasonably relied upon that Defendants would not violate the implied covenant of good faith and fair dealing in the employment relationship with Plaintiff.

30

156.     Defendants violated these agreements by conducting the unlawful acts as alleged herein by: (i) their unauthorized and unlawful access to Plaintiff's computer network, computers, electronic data and accounts, (ii) Defendants' accessing Plaintiff's computer network to monitor Plaintiff, copy Plaintiff's property and damage Plaintiff's property; and (iii) using such gathered data and intelligence for their own personal gain, as collectively alleged in all of the Claims for Relief alleged in this Complaint.

157.     It is implied in Plaintiff's agreements with Defendants that the Defendants would not hack into Plaintiff's computer network electronic communications, electronic files, or employ keystroke monitoring software, or like spyware technology; then gather intelligence and data from such efforts, and use such obtained intelligence and data for their own personal gain.

158.     Defendants' acts as alleged in this Complaint were reasonably calculated to deceive Plaintiff.

159.     Had Plaintiff known that Defendants would unlawfully hack into and monitor its computer activities as alleged herein this Complaint and steal its confidential and proprietary information, it would not have hired Defendants, including not conducting business with them.

160.     As alleged in the Complaint, Defendants' acts were made with the intent to deceive Plaintiff.

161.     Defendants' acts as alleged in this Complaint did in fact deceive Plaintiff resulting in damages to Plaintiff.

162.     Defendants made false misrepresentations to Plaintiff in order to: (1) monitor Plaintiff's activities, (2) divert business away from Plaintiff to other business unknown currently to Plaintiff, (3) gain access to, control and convert Plaintiff's property, (4) retribution against

Plaintiff for terminating its employment with Plaintiff; (5) for financial gain; and (6) for other purposes currently unknown to Plaintiff.

163.    As a result, Plaintiff has been damaged by: (1) incurring technical and legal expenses to investigate the allegations alleged in this Complaint, (2) the purchase of new electronic equipment; (3) increased advertising and marketing expenses, (4) lost profits and goodwill from the thirty-truck sale; and (5) other monetary losses currently unknown to Plaintiff.

164.    Defendants' actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiff to an award of punitive damages.

165.    Plaintiff has no adequate remedy of law for the continued violation of North Carolina fraudulent misrepresentation common law by Defendants.

166.    Pursuant to North Carolina common law, Plaintiff is entitled to relief for the violations of North Carolina fraudulent misrepresentation common law by Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

a.    For Compensatory Damages;

b.    For Punitive Damages;

c.    For Temporary and Permanent Injunction to cease such unlawful activity;

d.    For reasonable attorneys' fees and other litigation costs reasonably incurred; and

e.    For such other and further relief as the Court may deem just and equitable.

## EIGHTH CLAIM OF RELIEF
### Violations of North Carolina Unfair and Deceptive Trade Practices Act

167.    Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if the same were set forth at length herein.

168.    Plaintiff asserts this Claim for Relief against Defendants pursuant to North Carolina Unfair and Deceptive Trade Practices Act ("**UDTPA**").

32

169. The unfair and deceptive actions of Defendants were in or affecting commerce within the meaning of Chapter 75 of the North Carolina General Statutes in that their actions as described in this Complaint affected business relationships between Plaintiff and Defendants, as well as Plaintiff and third parties with which Plaintiff was doing business.

170. Upon information and belief, Defendants have acquaintances that are in the business and have the ability and financial incentive to financially prosper by taking business away from Plaintiff.

171. The actions of Defendants as described in this Complaint were unfair in that they made use of resources owned by Plaintiff in order to punish, deceptively gain something of value from Plaintiff, and unfairly compete against Plaintiff for as alleged *inter alia*, including but not limited to:

    a. By allowing access to Defendants to the confidential and proprietary information of Plaintiff that it held under a fiduciary duty of trust and confidence, including but not limited to, Plaintiff's premises, computer network, computers, DMS, electronic data and accounts and Plaintiff's intellectual property, customers personal and financial information;

    b. By participating in the unauthorized access into Plaintiff's premises, computer network, computers, DMS, electronic data and accounts and Plaintiff's intellectual property, customers personal and financial information;

    c. By participating in the unauthorized access to Plaintiff's proprietary and confidential information and financial data and property;

33

d. By using resources belonging to Plaintiff to access Plaintiff's premises, computer network, computers, electronic data and accounts and Plaintiff's customers personal and financial information;

e. By participating in the allegations alleged in the First Claim For Relief of this Complaint;

f. By participating in the allegations alleged in the Second Claim For Relief of this Complaint;

g. By participating in the allegations alleged in the Third Claim For Relief of this Complaint;

h. By participating in the allegations alleged in the Fourth Claim For Relief of this Complaint;

i. By participating in the allegations alleged in the Fifth Claim For Relief of this Complaint;

j. By participating in the allegations alleged in the Sixth Claim For Relief of this Complaint;

k. By participating in the allegations alleged in the Seventh Claim For Relief of this Complaint;

l. By participating in the allegations alleged in the Ninth Claim For Relief of this Complaint; and

m. In other respects not known currently to Plaintiff.

172. The actions of Defendants were deceptive in that, while they were in a position with trust and confidence with fiduciary responsibilities to Plaintiff, and they knowingly and

willfully engaged in acts intended to damage the status of Plaintiff with their existing and potential customers, at Plaintiff's expense, as more fully alleged in this Complaint.

173. Defendants' purpose for such unlawful conduct was to (1) monitor Plaintiff's activities, (2) divert business away from Plaintiff to other business unknown currently to Plaintiff, (3) gain access to, control and convert Plaintiff's property, (4) retribution against Plaintiff for terminating their employment with Plaintiff; (5) financial gain; and (6) for other purposes currently unknown to Plaintiff.

174. As a result of Defendants' actions, Plaintiff has been injured in the following ways: (1) incurring technical and legal expenses to investigate the allegations alleged in this Complaint, (2) the purchase of new electronic equipment; (3) increased advertising and marketing expenses, (4) lost profits and goodwill from the thirty-truck sale; and (5) other monetary losses currently unknown to Plaintiff.

175. Defendants' actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiff to an award of treble damages.

176. Plaintiff has no adequate remedy of law for the continued violation of the UDTPA by Defendants.

177. Pursuant to North Carolina law, Plaintiff is entitled to relief for the violations of the UDTPA by Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

a.      For Compensatory Damages;

b.      For Treble Damages under N.C.G.S. § 75-16;

c.      For Temporary and Permanent Injunction to cease such unlawful activity;

d.    For reasonable attorneys' fees and other litigation costs reasonably incurred under N.C.G.S. § 75-16.1; and

e.    For such other and further relief as the Court may deem just and equitable.

## NINTH CAUSE OF ACTION
### Violations of North Carolina Negligence Common Law

178.    Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if the same were set forth at length herein.

179.    Plaintiff asserts this Claim for Relief against Defendants pursuant to North Carolina Negligence Common Law.

180.    In order to bring a negligence claim, Plaintiff must allege a duty, breach, causation and damages.

181.    As alleged herein this Complaint, including but not limited to Defendants' acknowledgments of Plaintiff's Employee Handbook policies (*i.e.*, **Exhibits 1** and **2**), Defendants were employees of Plaintiff and had knowledge of Plaintiff's intellectual property and other proprietary information, and Plaintiff placed them in a position of trust by providing authorized access to its property, computer network, computers and other confidential and proprietary property associated therein.

182.    At all times material to the allegations of this Complaint, Defendants owed a fiduciary duty to Plaintiff in carrying out their responsibilities.

183.    Defendants owed a duty to the Plaintiff to exercise reasonable care in protecting Plaintiff's confidential and proprietary information.

184.    Defendants breached the fiduciary duties he owed to Plaintiff at all times material hereto in the following particulars:

36

a)      By accessing confidential and proprietary information of Plaintiff that Defendants held under a fiduciary duty of trust and confidence, including but not limited to, Plaintiff's premises, computer network, computers, electronic data and accounts and Plaintiff's intellectual property, customers personal and financial information;

b)      By participating in the unauthorized access to the Plaintiff's premises, computer network, computers, electronic data and accounts and Plaintiff's intellectual property, customers personal and financial information;

c)      By participating in the unauthorized access to Plaintiff's online accounts;

d)      By using resources belonging to Plaintiff to access Plaintiff's premises, computer network, computers, electronic data and accounts and Plaintiff's intellectual property, customers personal and financial information;

e)      By participating in the allegations alleged in the First Claim For Relief of this Complaint;

f)      By participating in the allegations alleged in the Second Claim For Relief of this Complaint;

g)      By participating in the allegations alleged in the Third Claim For Relief of this Complaint;

h)      By participating in the allegations alleged in the Fourth Claim For Relief of this Complaint;

i)      By participating in the allegations alleged in the Fifth Claim For Relief of this Complaint;

j)      By participating in the allegations alleged in the Sixth Claim For Relief of this Complaint;

k)     By participating in the allegations alleged in the Seventh Claim For Relief of this Complaint;

l)     By participating in the allegations alleged in the Eighth Claim For Relief of this Complaint; and

m)     In other respects not known currently to Plaintiff.

185.    Defendants' purpose for such unlawful conduct was to: (1) monitor Plaintiff's activities, (2) divert business away from Plaintiff to other business unknown currently to Plaintiff, (3) gain access to, control and convert Plaintiff's property, (4) retribution against Plaintiff for terminating their employment with Plaintiff; (5) financial gain and (6) for other purposes currently unknown to Plaintiff.

186.    As a result of Defendants' actions, the Plaintiff has been damaged by: (1) incurring technical and legal expenses to investigate the allegations alleged in this Complaint, (2) the purchase of new electronic equipment; (3) increased advertising and marketing expenses, (4) lost profits and goodwill from the thirty-truck sale; and (5) other monetary losses currently unknown to Plaintiff.

187.    Defendants' actions complained of herein were conscious, intentional, wanton and malicious entitling Plaintiff to an award of punitive damages.

188.    Plaintiff has no adequate remedy of law for the continued violation of North Carolina negligence common law by Defendants.

189.    Pursuant to North Carolina common law, Plaintiff is entitled to relief for the violations of North Carolina negligence common law by Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

a.     For Compensatory Damages;

38

b.      For Temporary and Permanent Injunction to cease such unlawful activity;

c.      For reasonable attorneys' fees and other litigation costs reasonably incurred under N.C.G.S. § 75-16.1; and

d.      For such other and further relief as the Court may deem just and equitable.

### JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

**WHEREFORE**, Plaintiff respectfully prays the Court for the following relief:

1.      That Plaintiff has and recovers of Defendants, jointly and severally, a sum to be proven at trial, but said sum is in excess of seventy-five thousand dollars ($75,000), punitive damages in excess of seventy-five thousand dollars ($75,000), and attorneys fees;

2.      That Plaintiff also has and recovers of Defendants, jointly and severally, Statutory Damages, pursuant to 18 U.S.C. § 2520; 18 U.S.C. § 2707; and N.C.G.S. § 15A-296;

3.      That Plaintiff also has and recover of Defendants, jointly and severally, treble damages pursuant to Chapter 75 of the General Statutes of North Carolina, N.C.G.S. § 75-16;

4.      For a Temporary Injunction ordering Defendants, jointly and severally, to cease and desist from any and all like activity as alleged in this Complaint

5.      For a Permanent Injunction ordering Defendants, jointly and severally, to cease and desist from any and all like activity as alleged in this Complaint;

6.      That Plaintiff has and recover of Defendants, jointly and severally, attorneys' fees and reasonable incurred expenses pursuant to N.C. Gen. Stat. § 75-16.1; and

7.      That the Court grant such other and further relief as it may deem just and proper.

Respectfully submitted, this the 1st day of November, 2017.

By:   __/s/ Mark W. Ishman_____
           Mark W. Ishman, NC State Bar # 27908

39

Attorney for Capital Automotive Sales, LLC
Bass Sox Mercer, Attorneys
9104 Falls of Neuse Road,
Suite 200
Raleigh, NC 27615
Phone: (919) 539-7626
Email: mishman@dealerlawyer.com